1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

THOMAS DELGADO,

       Petitioner,

  v.

JAMES A. YATES, Warden,

       Respondent.

_____/

No. C 07-0181 CRB (PR)

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner, a state prisoner incarcerated at Pleasant Valley State Prison in Coalinga, California, seeks a writ of habeas corpus under 28 U.S.C. § 2254, claiming instructional error, cruel and unusual punishment, ineffective assistance of counsel, and error in the state's post-conviction process.

## STATEMENT OF THE CASE

Petitioner was convicted by jury in the Superior Court of the State of California in and for the County of Santa Clara of (1) resisting arrest, (2) assault on a peace officer by means likely to produce great bodily injury, (3) misdemeanor battery, and (4) possession of a controlled substance. The trial court found true that petitioner had suffered four prior strike convictions and had served three prior prison terms. On February 4, 2004, he was sentenced to 25 years to life in state prison pursuant to California's Three Strikes Law.

**United States District Court**
For the Northern District of California

1   Petitioner unsuccessfully appealed his conviction to the California Court of Appeal

2   and the Supreme Court of California, which on August 20, 2006 denied review.  Petitioner

3   also unsuccessfully sought collateral relief from the state courts.  On September 5, 2006, the

4   Supreme Court of California denied his last request for state habeas relief.

5   Petitioner then filed the instant federal petition for a writ of habeas corpus under 28

6   U.S.C. § 2254.  On May 29, 2007, this Court ordered respondent to show cause why a writ of

7   habeas corpus should not be granted.  Respondent has filed an answer to the order to show

8   cause and petitioner has filed a traverse.

9   <b>FACTUAL BACKGROUND</b>

10   The California Court of Appeal summarized the facts of the case as follows:

11   San Jose Police Officer James Hussey effected a nighttime traffic stop because he
    believed that the automobile driver was intoxicated. Defendant, a parolee at large with
12   an outstanding arrest warrant, exited from the driver's position and ran away at full
    speed into an apartment complex alleyway. Officer Hussey left his vehicle and
13   pursued defendant. Defendant ignored Officer Hussey's admonitions to stop. He ran
    out of Officer Hussey's sight but fell down. Officer Hussey illuminated his flashlight
14   and saw him lying on the ground. Defendant got up and continued running. At some
    point, he circled around a tree and ran back toward Officer Hussey. The two collided
15   and fell on the ground. Officer Hussey got on top of defendant, but defendant grabbed
    Officer Hussey's neck and began choking him. Officer Hussey hit defendant in the
16   head several times with his flashlight. Defendant released his grip and tried to escape
    by biting Officer Hussey's hand. Officer Hussey hit defendant several more times
17   with the flashlight. Another officer arrived and assisted in placing handcuffs on
    defendant. This officer also searched defendant and found methamphetamine. An
18   ambulance transported defendant to the hospital for treatment where defendant's
    blood tested positively for methamphetamine and amphetamine. Officer Hussey also
19   received treatment at the hospital. Officer Bruce Alexander relieved Officer Hussey
    and escorted defendant to his vehicle. As he freed a hand to unlock the car, defendant
20   ran away through the parking lot. At some point, defendant stopped and submitted to
    custody.

21
    People v. Delgado, No. CC109377, 2006 WL 1725550, at *1 (Cal. Ct. App. June 23, 2006)
22
    (footnotes omitted) (Resp't Exh. D).
23
    <b>DISCUSSION</b>
24
    **I.    Standard of Review**
25
    This Court may entertain a petition for a writ of habeas corpus "in behalf of a person
26
    in custody pursuant to the judgment of a State court only on the ground that he is in custody
27
    in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).
28

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

**United States District Court**
For the Northern District of California

**II.    Claims**

Petitioner seeks federal habeas relief based on four claims: (1) the trial court violated petitioner's rights to due process and a fair trial by erroneously giving the jury a flight instruction; (2) petitioner's 25-year-to-life sentence is cruel and unusual punishment in violation of the Eighth Amendment; (3) petitioner was denied effective assistance of counsel because his trial counsel failed to request that the investigating officer be prohibited from sitting at the prosecution table in uniform during trial; and (4) the California Supreme Court's summary disposition of petitioner's habeas claim and failure to grant an evidentiary hearing violated petitioner's due process rights.

　　　1.    Instructional error

Petitioner claims that the trial court violated his rights to due process and a fair trial by instructing the jury pursuant to CALJIC No. 2.52 (standard flight instruction). Namely, petitioner argues that the flight instruction was wrongly given in light of the facts of his case – first, petitioner's flight from Officer Hussey at the scene did not justify the instruction because it occurred before he committed any of the charged offenses; and second, petitioner's flight from Officer Alexander did not justify the instruction because it occurred after petitioner's arrest.

The trial court instructed the jury as follows:

> The flight of a person immediately after the commission of a crime or after he is accused of a crime is not sufficient in itself to establish his guilt but is a fact which, if proved, may be considered by you in the light of all the other proved facts in deciding whether a defendant is guilty or not guilty. The weight to which this circumstance is entitled is a matter for you to decide.

Delgado, 2006 WL 1725550 at *2.

To obtain federal habeas relief for error in the jury charge, petitioner must show that the error "so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). Here, where a potentially defective instruction is at issue, the court must inquire "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Id. at 72 & n. 4 (quoting Boyde v. California, 494

4

U.S. 370, 380 (1990)).  The Court has "defined the category of infractions that violate fundamental fairness very narrowly."  Estelle, 502 U.S. at 73 (quoting Dowling v. United States, 493 U.S. 342, 352 (1990) (internal quotation marks omitted)).

A determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that a constitutional error has occurred.  Calderon v. Coleman, 525 U.S. 141, 146-47 (1998).  If constitutional error is found, the court must also determine that the error "had a substantial and injurious effect or influence in determining the jury's verdict" before granting habeas relief.  Id. at 145 (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

The California Court of Appeal rejected petitioner's claim that the instruction on flight was not supported by the evidence:

> 'An instruction on flight is properly given if the jury could reasonably infer that the defendant's flight reflected consciousness of guilt, and flight requires neither the physical act of running nor the reaching of a far-away haven. [Citation.]  Flight manifestly does require, however, a purpose to avoid being observed or arrested.' [Citation.] (People v. Visciotti (1992) 2 Cal.4th 1, 60, quoting People v. Crandell (1988) 46 Cal.3d 833, 869.)  The flight instruction 'neither requires knowledge on a defendant's part that criminal charges have been filed, nor a defined temporal period within which the flight must be commenced, nor resistance upon arrest.' (People v. Carter (2005) 36 Cal.4th 1114, 1182.)
>
> Defendant simply overlooks that the evidence of his flight from the scene reflected a consciousness of guilt and a purpose to avoid arrest for possession of a controlled substance (methamphetamine), which was the fourth of the charged offenses.  He tacitly acknowledges this in his reply brief and counters that the trial court should have instructed sua sponte that the flight instruction applied only to the controlled-substance count.  There is no merit to this claim because defendant did not proffer a proposed modification of the instruction to obviate the purported infirmity about which he now complains.  When a proposed instruction correctly states the general principle of law applicable to the case, but the defendant believes it is misleading or confusing under the specific facts of the case, clarifying language must be proffered. (People v. Rodrigues (1994) 8 Cal.4th 1060, 1191-1192.)  Failure to do so precludes a claim on appeal that the trial court's failure to expand, modify or refine standardized instructions provides grounds for reversal. (People v. Daya (1994) 29 Cal.App.4th 697, 714.)
>
> Defendant also argues that CALJIC No. 2.52 improperly reduces the prosecution's burden of proof because it advises the jury that it may consider flight in the light of all the other proved facts in deciding guilt.  But defendant cites no authority for this proposition.  And he fails to acknowledge Supreme Court precedent to the contrary.  The most recent precedent succinctly concludes that the instruction is proper and does not lessen the prosecution's burden of proof.  (People v. Boyette (2002) 29 Cal.4th 381, 438-439.)

Delgado, 2006 WL 1725550, at *2.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    The California Court of Appeal's rejection of petitioner's instructional error claim was

2 not contrary to, or involved an unreasonable application of, clearly established Supreme

3 Court precedent.  28 USC § 2254(d).  Nor did it involve an unreasonable determination of the

4 facts.  Id.  As the state court noted, petitioner's initial flight from the scene could be inferred

5 by the jury as reflecting a consciousness of guilt and an intent to avoid arrest for possession

6 of a controlled substance (methamphetamine), which was the fourth of the charged offenses.

7 And, petitioner's later flight, following his arrest, could be inferred by the jury as reflecting

8 petitioner's consciousness of guilt in regards to any or all of the charged offenses.  The state

9 court reasonably concluded that the evidence supported the instruction.

10    The state court also reasonably concluded that the instruction did not lessen the

11 prosecution's burden of proof.  The instruction required the prosecution to prove flight.  The

12 jury could find that there was no flight or, if it found there was flight, accord little or no

13 significance to that fact.

14    The flight instruction did not "so infuse[] the trial with unfairness as to deny due

15 process of law."  Estelle, 502 U.S. at 75 (quoting Lisenba v. California, 314 U.S. 219 (1941)

16 (internal quotation marks omitted)); see also County Court of Ulster County v. Allen, 442

17 U.S. 140, 165 (1979) (holding permissive presumption constitutional where there was a

18 "'rational connection' between the basic facts that the prosecution proved and the ultimate

19 fact presumed, and the latter is 'more likely than not to flow from' the former").

20    Even if the trial court's instruction on flight amounted to constitutional error, it cannot

21 be said that the error had a substantial or injurious effect on the jury's verdict.  See Calderon,

22 525 U.S. at 146-47.  The instruction specifically cautioned the jury not to infer petitioner's

23 guilt from flight alone.  The jury necessarily had to rely on other evidence against petitioner

24 in order to find petitioner guilty.  Indeed, the evidence presented against petitioner was

25 substantial and included: Officer Hussey's eyewitness testimony that petitioner fled from his

26 car and, soon after, charged the officer and attempted to choke and bite him (Trial Testimony

27 "TT" 83:22 - 88:21); Officer Rocha's eyewitness testimony that he found methamphetamine

28 on petitioner's person immediately after his arrest (TT 237:15 - 240:13); Officer Sanchez's

**United States District Court**
For the Northern District of California

1   testimony regarding the drug paraphernalia he found in the car driven by petitioner (TT 211:1

2   - 212:13); Officer Alexander's eyewitness testimony that petitioner attempted to flee a

3   second time following his release from the hospital (TT 261:2 - 263:22); a controlled

4   substance report illustrating that petitioner's blood tested positively for methamphetamine

5   and amphetamine shortly after his arrest (Exh. 7); the methamphetamine (Exh. 12) and

6   plastic container (Exh. 13) found on petitioner's person at the time of his arrest; and

7   photographs of Officer Hussey's injuries (Exhs. 1-7).  In light of all of this evidence against

8   petitioner, it simply cannot be said that he was prejudiced by the flight instruction.  See

9   Calderon, 525 U.S. at 146-47.

10         Petitioner is not entitled to federal habeas relief on his instructional error claim.

11         2.      Cruel and unusual punishment.

12         Petitioner claims that his sentence of 25 years to life, pursuant to California's Three

13   Strikes Law, is cruel and unusual punishment in violation of the Eighth Amendment.

14         A criminal sentence that is not proportionate to the crime for which the defendant was

15   convicted violates the Eighth Amendment.  Solem v. Helm, 463 U.S. 277, 284 (1983) (The

16   Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are

17   disproportionate to the crime committed.").  But the Eighth Amendment "forbids only

18   extreme sentences that are 'grossly disproportionate' to the crime."  Ewing v. California, 538

19   U.S. 11, 23 (2003) (adopting Justice Kennedy's concurrence in Harmelin v. Michigan, 501

20   U.S. 957, 1001 (1991)).

21         For purposes of federal habeas corpus review, the gross disproportionality principle is

22   "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable

23   application of' framework" under 28 U.S.C. § 2254(d)(1).  Lockyer v. Andrade, 538 U.S. 63,

24   73 (2003) (state court decision affirming two consecutive terms of 25 years to life in prison

25   for third "strike" conviction was not contrary to, or an unreasonable application of, the gross

26   disproportionality principle set forth in prior Supreme Court decisions).  A sentence will be

27   found grossly disproportionate only in "exceedingly rare" and "extreme" cases.  Id.

28

In determining whether a sentence is grossly disproportionate under a recidivist sentencing statute such as California's Three Strikes Law, the court looks to whether such an "extreme sentence is justified by the gravity of [an individual's] most recent offense and criminal history." Ramirez v. Castro, 365 F.3d 755, 768 (9th Cir. 2004).

Petitioner was sentenced pursuant to California's Three Strikes Law, which is triggered when a defendant is convicted of a felony, and has suffered one or more prior "serious" or "violent" felony convictions. See Cal. Penal Code § 667(e)(2)(A). Under the Three Strikes sentencing scheme, any felony conviction can constitute the third "strike" and subject a defendant to a sentence of 25 years, or three times the term otherwise permitted for the current offense, to life in prison. See id.

Petitioner's triggering offenses were resisting arrest (Cal. Penal Code § 69), assault on a police officer by means likely to produce great bodily injury (Cal. Penal Code § 245(c)), and possession of a controlled substance (Cal. Health & Saf. Code § 11377(d)), properly charged as felonies under California law. The trial court found true four distinct prior "strike" felony convictions for assault with a deadly weapon, attempted robbery and robbery, and sentenced petitioner to 25 years to life.

The California Court of Appeals rejected petitioner's claim after carefully reviewing pertinent Supreme Court precedent:

> A punishment is excessive under the Eighth Amendment if it involves the 'unnecessary and wanton infliction of pain' or if it is 'grossly out of proportion to the severity of the crime.' (Gregg v. Georgia (1976) 428 U.S. 153, 173.) A punishment may violate article I, section 17 of the California Constitution if 'it is so disproportionate to the crime for which it is inflicted that is shocks the conscience and offends fundamental notions of human dignity.' (In re Lynch (1972) 8 Cal.3d 410, 424.)

> As defendant implicitly acknowledges, his lengthy sentence cannot be viewed as punishment for the instant offenses; it was punishment for committing a felony and doing so as a recidivist offender. In other words, defendant 'was punished not just for his current offense but for his recidivism. Recidivism justifies the imposition of longer sentences for subsequent offenses.' (People v. Cooper (1996) 43 Cal.App.4th 815, 825.)

> In Rummel v. Estelle (1980) 445 U.S. 263, 284-285, the United States Supreme Court explained that society is warranted in imposing increasingly severe penalties on those who repeatedly commit felonies. In that case, the defendant was given a mandatory life sentence for stealing $120.75 and having prior convictions for fraud involving $80 worth of goods and passing a forged check for $28.36. (Id. at p. 265.) The court

United States District Court
For the Northern District of California

rejected the defendant's claim that his sentence was disproportionate to the severity of his current offense. The court pointed out that the primary goals of a recidivist statute are to 'deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes . . . . [T]he point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction.' (Id. at 284-285.)

More recently, in Lockyer v. Andrade (2003) 538 U.S. 63, the court rejected a similar claim. There, the defendant stole $153.54 worth of videotapes from two stores on separate occasions. A jury convicted him of two counts of petty theft with a prior and found that he had at least two prior strike convictions. The court sentenced him under the Three Strikes law to two consecutive life terms. The record revealed the following: in 1982, the defendant suffered a state misdemeanor theft conviction and a few felony burglary convictions; in 1988, the defendant suffered a federal conviction for transporting marijuana; in 1990, the defendant suffered a state misdemeanor petty theft conviction and a second federal conviction for transporting drugs; in 1991, the defendant was arrested for a state parole violation – escape from federal prison; in 1993, the defendant was released on parole; and, in 1995, the defendant committed the two current offenses. Given these circumstances, the court did not find the defendant's two life terms to be unconstitutional.

In Ewing v. California (2003) 538 U.S. 11, the defendant was convicted of grand theft – he stole three golf clubs worth $399 each. Under the Three Strikes law, the trial court imposed a life term. The record revealed that the defendant's criminal history spanned from 1984 to 1999 and included misdemeanor and felony convictions for petty theft, auto theft, battery, burglary, robbery, possession of a firearm. There too, the court did not find the defendant's sentence to be unconstitutional.

Defendant's sentence and circumstances are not distinguishable from those in these cases and do not suggest that his punishment was unconstitutional. (Cf. also Harmelin v. Michigan (1991) 501 U.S. 597 [life without possibility of parole for possession of drugs]; People v. Poslof (2005) 126 Cal.App.4th 92 [three-strike life term for failing to register as sex offender not unconstitutional]; People v. Cline (1998) 60 Cal.App.4th 1327 [life term for grand theft and residential burglary with prior residential burglary convictions].)

Defendant's reliance on People v. Carmony (2005) 127 Cal.App.4th 1066 is erroneous.

In Carmony, the defendant, a sex offender, registered his correct address with police one month before his birthday, as required by law, but failed to update his registration with the same information within five working days of his birthday. (People v. Carmony, supra, 124 Cal.App.4th at p. 1071.) He later pleaded guilty to failing to register as a sex offender and admitted three prior serious or violent felony convictions. (Ibid.) He was sentenced to a three-strike term of 25 years to life. On appeal, the court deemed the sentence unconstitutional. In reaching its conclusion, the court noted that the defendant's current offense involved a passive omission and 'no more than a harmless technical violation of a regulatory law.' (Id. at pp. 1072, 1077.) Moreover, the court pointed out that the registration requirement was designed to ensure that law enforcement authorities could readily conduct surveillance of sex

**United States District Court**
For the Northern District of California

1
2
3

offenders.  However, in the defendant's case, 'there was no new information to update and the state was aware of that fact.  Accordingly, the requirement that defendant reregister within five days of his birthday served no stated or rational purpose of the registration law.'  (Id. at p. 1073.)

4
5

Here, defendant's offenses are not harmless technical violations of a regulatory law, as defendant concedes.  And they are unquestionably more serious than the offense in Carmony and even those in Rummel, Andrade, and Ewing.

6
7
8

When considered with defendant's lengthy, serious record, the assertion that defendant's sentence is cruel and unusual rings hollow.  Defendant cites no case holding that such a sentence, given such a record, is unconstitutional.  In sum, we do not find that defendant's sentence qualifies as cruel and unusual punishment under the federal or state Constitutions.

Delgado, 2006 WL 1725550, *3-5.

9
10
11
12
13
14

The Court of Appeal's rejection of petitioner's claim was not contrary to, or involved an unreasonable application of, clearly established Supreme Court law.  See 28 U.S.C. § 2254(d).  Nor did it involve an unreasonable determination of the facts.  See id.  The trial court noted the seriousness of petitioner's crimes as well as petitioner's lengthy criminal history:

15
16
17
18

So we have a situation where the charges, in my view, are very serious, where the history is 19 years of criminal justice-not government-but criminal justice supervision. Defendant has been in and out of custody. He's got four strikes. The most recent is 1999. You know, there doesn't seem to be much room here. I mean, he does-I acknowledge he has a loving and supportive-and supportive family. But that is only part of the equation.  He has eight felonies, eleven misdemeanors.  It's just-it's just an atrocious record.  And it's not one that I believe justifies taking the defendant outside the Three Strikes law.

19
20
21
22
23
24
25

TT 855:18 - 856:1.  In light of petitioner's history of criminal recidivism, which includes crimes of violence, his sentence cannot be said to be grossly disproportionate in violation of the Eighth Amendment.  See Rios v. Garcia, 390 F.3d 1082, 1086 (9th Cir. 2004) (holding sentence of 25 years to life not grossly disproportionate for conviction of petty theft with priors where defendant struggled with guard to prevent apprehension, where his prior convictions of robbery involved threat of violence "because his cohort used a knife," and where defendant had a lengthy criminal history).

26

Petitioner is not entitled to federal habeas relief on his Eighth Amendment claim.

27

//

28

//

10

1          3.       Ineffective assistance of counsel

2          Petitioner claims that he was denied effective assistance of counsel because his trial

3 counsel failed to object to the investigating officer's presence, in uniform, at the prosecution

4 table during trial.  Petitioner notes that he asked his lawyer to object to the officer's

5 continued presence several times, but his lawyer declined to do so.  He asserts that his trial

6 counsel could not have had a legitimate tactical or strategic reason for refraining from

7 objecting.  According to petitioner, the investigating officer's continued presence at the

8 prosecution table during trial amounted to impermissible "prosecutorial vouching" and

9 deprived petitioner of his due process and fair trial rights.

10         In order to prevail on a claim of ineffective assistance of counsel, petitioner must pass

11 the two-part test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984).  Petitioner

12 must demonstrate that: (1) "counsel's representation fell below an objective standard of

13 reasonableness," and (2) "counsel's deficient performance prejudiced the defense."  Id. at

14 687-88.  Concerning the first element, there is a "strong presumption that counsel's conduct

15 falls within the wide range of reasonable professional assistance."  Id. at 689.  Hence,

16 "judicial scrutiny of counsel's performance must be highly deferential."  Id.  To fulfill the

17 second element, a "defendant must show that there is a reasonable probability that, but for

18 counsel's unprofessional errors, the result of the proceeding would have been different."  Id.

19 at 694.  A reasonable probability is a probability sufficient to undermine the confidence in

20 the outcome.  Id.

21         To show prejudice under Strickland from failure to object, petitioner must show that

22 (1) had his counsel objected, it is reasonable that the trial court would have sustained the

23 objection, and (2) had the objection been sustained, it is reasonable that there would have

24 been an outcome more favorable to petitioner.  Wilson v. Henry, 185 F.3d 986, 990 (9th Cir.

25 1999).  Petitioner fails to make such a showing.

26         California law generally allows an investigating officer to be present at trial when

27 designated by a government party.  See Cal. Evid. Code § 777(b) and (c); see also People ex

28 rel. Curtis v. Peters, 143 Cal.App.3d 597 (1983) (trial court erred in excluding the People's

**United States District Court**
For the Northern District of California

11

**United States District Court**
For the Northern District of California

1   investigating officer).  It is unclear whether Officer Hussey was a properly "designated"

2   officer or employee within the meaning of section 777, or whether an objection to his

3   presence would have been sustained because he was in full uniform.

4        Regardless, petitioner's claim fails because there is no reasonable likelihood that there

5   would have been an outcome more favorable to petitioner had the objection been made and

6   sustained.  <u>See</u> <u>Wilson</u>, 185 F.3d at 990.  Given the plethora of evidence presented against

7   petitioner, detailed above in section II.1, it simply cannot be said that there is a reasonable

8   probability that the absence of the investigating officer from the prosecution table would

9   have altered the jury's verdict.  <u>See</u> <u>Strickland</u>, 466 U.S. at 694.

10       The California Supreme Court's rejection of petitioner's claim was not contrary to, or

11  involved an unreasonable application of, clearly established Supreme Court precedent, or

12  was based on an unreasonable determination of the facts.  <u>See</u> 28 U.S.C. § 2254(d).

13  Petitioner is not entitled to federal habeas relief on his ineffective assistance of counsel

14  claim.

15         4.     <u>Error in the state's post-conviction process.</u>

16       Petitioner claims that the California Supreme Court's denial of his habeas petition

17  without a reasoned opinion or evidentiary hearing violated his due process rights.  This claim

18  is without merit because it is well-established that errors in the state post-conviction review

19  process are not addressable through federal habeas corpus proceedings.  <u>See</u> <u>Ortiz v. Stewart</u>,

20  149 F.3d 923, 939 (9th Cir. 1998); <u>Gerlaugh v. Stewart</u>, 129 F.3d 1027, 1045 (9th Cir. 1997);

21  <u>Villafuerte v. Stewart</u>, 111 F.3d 616, 632 n. 7 (9th Cir. 1997); <u>Franzen v. Brinkman</u>, 877 F.2d

22  26, 26 (9th Cir. 1989).

23                           **CONCLUSION**

24       For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The

25  clerk shall enter judgment in favor of respondent and close the file.

26       **IT IS SO ORDERED.**

27                              _____

28  Dated: November 12, 2008             CHARLES  R. BREYER
                                    UNITED STATES DISTRICT JUDGE